**KISOB LAW FIRM**
Apemwoyah Kisob Alaric-Lorenzo Esq. (SBN. 321507)
Alkisob@kisoblaw.US
Attorney and Counselor-at-Law
New York, California, Nigeria & Cameroon
SBN: 5402318, 321507, 094525 & 1853
3680 Wilshire Blvd Suite P 04-1147
Los Angeles CA 90010
Telephone:  7028634243
Fax: 2133838080
Attorney for Plaintiffs
Pauline Bridges
Thomas Neal

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULINE BRIDGES; THOMAS NEAL<br><br>**Plaintiffs,**<br><br>vs.<br><br>KOHL'S STORES, INC. AND DOES 1 THROUGH 10, INCLUSIVE.<br><br>**Defendant(s)** | **Case No.:**<br>**COMPLAINT FOR:**<br>1. Discrimination in violation of the Unruh Act<br>2. Intentional Infliction of Emotional Distress<br>3. Negligent hiring, supervision or retention of employee<br>4. Discrimination in violation of 42 USC § 1981<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs **PAULINE BRIDGES** and **THOMAS NEAL**, demand trial by jury and alleges as follows:

## PARTIES

1. Plaintiffs PAULINE BRIDGES and THOMAS NEAL at all times mentioned herein, resided in San Francisco County, California.

2. Plaintiffs are informed and believe and based thereon allege, that at all times mentioned herein, Defendant Kohl's, Inc., is a corporation formed in Wisconsin and doing business in San Joaquin County as Kohl's ("**Kohl's**" and/or **"the store"**).

3. Plaintiffs are unaware of the true names or capacities of the defendants sued herein under fictitious names DOES 1 through 10, inclusive, and sue said fictitiously

named Defendants in accordance with Californian law.

4. Plaintiffs are informed and believe and based thereon allege, that at all times mentioned herein, DOES 1 through 10 are and were individuals, corporations, associations or otherwise. Plaintiffs will amend this complaint to allege their true names and capacities when they become known to Plaintiffs. Kohl's and DOES 1 through 10 are hereinafter referred to collectively as "Defendants."

5. Plaintiffs are informed and believe and based thereon allege, that at all times mentioned herein, Defendants including DOES 1 through 10, were the agents, employees, representatives, fiduciaries, insurers, and/or co-conspirators of each other. Defendants were acting within the course and scope of such relationship and are responsible for the acts alleged herein and as proximate cause for Plaintiff's damages.

## JURISDICTION AND VENUE

6. This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy is greater than $75,000. Kohl's, Inc. is a Corporation formed in Wisconsin and has its principal place of business in Menomonee Falls, Wisconsin. Plaintiffs reside in California. The amount in controversy far exceeds $75000.

7. Alternatively, this court has jurisdiction under 28 U.S.C. § 1331 (federal question), as this lawsuit arises under the Constitution and laws of the United States, and specifically pursuant to 28 U.S.C. §1343, as this action seeks redress for civil rights violations under 42 U.S.C. §1981. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367, as they arise from the same case or controversy as Plaintiff's claims under federal law.

8. Venue is proper in this court pursuant to 28 U.S.C §1391 because the events giving rise to this complaint happened in this district (San Joaquin County).

9. Plaintiff's claim for attorneys' fees and costs under federal law is predicated upon 42 U.S.C. §1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1981.

10. Plaintiff's claim for attorneys' fees and costs under state law is predicated upon California Civil Code § 52.1 and 52(a) which authorizes the award of attorneys' fees and costs in an action brought under those statutes, and California Code of Civil Procedure §1021.5, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs whose actions vindicate important rights.

11. Defendant Kohl's is vicariously liable for the actions of its employees. "An employer may be held vicariously liable for torts committed by an employee within the scope of employment." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208). Conduct is within the scope of employment if: it is reasonably related to the kinds of tasks that the employee was employed to perform; or it is reasonably foreseeable in light of the employer's business or the employee's job responsibilities. (CACI No. 3720).

## FACTS COMMON TO ALL CAUSES OF ACTION

12. Upon information and belief and based thereon, on September 19, 2022, at or around 3:30 p.m., Plaintiffs entered the Kohl's store in Stockton California to do some shopping. During their time there, an employee of the store who appeared to be the store's Loss Prevention Associate ("LP") made herself extremely present. Plaintiffs thought that she had a very hostile disposition and had been making them extremely uncomfortable because of how aggressively she followed them.

13. Upon information and belief and based thereon, Plaintiff Bridges decided to step outside the store for a few minutes and get some air. Before doing so, she had asked Plaintiff Neal to go grab a shoe box with the clearance tag on it matching the shoes she had grabbed for him so that they could show the clerk at checkout.

14. Upon information and belief and based thereon, Plaintiff Neal grabbed Plaintiffs' cart and attempted to go back to the shoe department when the Loss Prevention associate named Erica, approached him and asked if she could help.

15. Upon information and belief and based thereon, Plaintiff Neal said he was fine and explained that he was just going back to the shoe department to grab a pair of shoes that were marked on clearance like the ones he already had in his cart.

16. Upon information and belief and based thereon, Erica stopped and pulled out her phone and said "well I can help you figure that out from here." She looked at the shoes and then told Mr. Neal that those shoes wouldn't be on clearance because they are the most popular selling shoes that they had at the time.

17. Upon information and belief and based thereon, the way Erica approached Mr. Neal made him feel very uncomfortable so as he turned the cart around to head back towards the jewelry department, Erica, the Loss Prevention Associate grabbed the cart and told Mr. Neal (an African-American male) that she's going to take it to customer service "until your girlfriend comes back in and is ready to check out."

18. Upon information and belief and based thereon, feeling mortified, humiliated and belittled, Mr. Neal walked outside to meet his White girlfriend Plaintiff Bridges, to let her know what just took place. After explaining to her what happened, Plaintiffs went back into the store and headed for the shoe department and found marked for clearance, the same shoes that Loss Prevention had said were not on sale.

19. Upon information and belief and based thereon, Plaintiffs picked up several boxes of the shoes and went to the front and spoke with the manager about the entire situation. The manager apologized profusely and explained how she agreed it was terribly wrong the way Plaintiffs were treated and how Erica had acted. The manager accompanied Plaintiffs to pick up their cart and then to the checkout stand.

20. Upon information and belief and based thereon, Plaintiffs asked for an apology from Erica and asked for an explanation as to why Mr. Neal was denied the opportunity to go back to the shoe department unless he was accompanied by his White "girlfriend", Plaintiff Bridges. Plaintiffs also demanded to know why the employee (Erica) had misinformed them in regard to the price of the shoes.

21. Upon information and belief and based thereon, Plaintiffs also asked why Mr. Neal was not allowed to keep the shopping cart while Plaintiff Bridges went outside for some air. Erica could not offer any explanation but apologized and offered Plaintiffs the name of the general store manager who was going to be at the store in a couple days.

22. Upon information and belief and based thereon, the incident has bothered Plaintiffs every single day and they feel really traumatized. If Mr. Neal were White, Plaintiffs would not have been subjected to this kind of treatment. Plaintiff Neal has lost confidence in himself and feels as if he is subhuman because of the color of his skin. Plaintiff Bridges is devastated and feels like she would always be targeted if she associates with a person of color.

## FIRST CAUSE OF ACTION

## DISCRIMINATION UNDER THE UNRUH CIVIL RIGHTS ACT

### (Brought by All Plaintiffs Against All Defendants.)

23. Plaintiffs hereby incorporate all preceding paragraphs as if set forth herein.

24. Discrimination in business establishments is proscribed under California's Unruh Civil Rights Act. California Civil Code § 51 (b) states, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

25. §52 (a) of the same code, states "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6."

26. The classes protected by the Unruh Act are illustrative, not exhaustive, as the Unruh Act is intended to protect all persons from arbitrary discrimination. *Vaughn v. Hugo Neu Proler Int'l.*, 223 Cal. App. 3d 1612, 1617 (1990); *O'Connor v. Village Green Owners Assn.*, 33 Cal. 3d 790, 795 (1983).

27. The store is a business establishment. This is undisputed and it falls within the ambit of the Unruh Act. When the store's employee seized the cart from Plaintiff Neal and informed him that he would only get it back when his White "Girlfriend" comes back into the store, a clear distinction was made on the basis of race with the attendant result of denying Plaintiffs full and equal shopping accommodations and facilities. Not every customer is treated that way.

28. It does not matter whether Plaintiffs were later allowed to complete their purchase. The Unruh act punishes each and every offense of discrimination ["Whoever … makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense …" §52(a) cal. Civ. Code.]. The Unruh Act mandates "equal treatment of patrons in *all aspects* of the business." (*Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 29-30, 219 Cal.Rptr. 133, 707 P.2d 195, italics added.). The Unruh Act does not require that a victim of business establishment's discriminatory, unequal treatment be denied services or demand equal treatment to state a claim under the Act. (See *Angelucci v. Century Supper Club* (2007) 41 Cal.4th at p. 168, 59 Cal.Rptr.3d 142, 158 P.3d 718.)

29. In *Hutson v. The Owl Drug Co.* (1926) 79 Cal.App. 390, 249 P. 524, the African American plaintiff was allowed to sit at a soda fountain, but the employee "placed [her order] amongst dirty dishes on the counter," and another employee then struck the plaintiff and threw a cup of coffee on her. (Id. at p. 392, 249 P. 524.) The plaintiff suffered physical injuries from the assault, as well as "great humiliation and embarrassment." ( Ibid. ) The Hutson court held that the defendant violated the Unruh Act because the plaintiff "was not accorded the same accommodations, advantages, facilities and privileges" on account of her race, even though she was not denied any services. (Ibid. ) It was the unequal, discriminatory treatment she received that was actionable under the Unruh Act. (Ibid. )

30. Similarly, in *People v. McKale* (1979) 25 Cal.3d 626 at page 637, 159 Cal.Rptr. 811, 602 P.2d 731, the People alleged " 'a pattern of discriminative conduct' " by defendant against some of its tenants because of their ethnic or religious background,

"varying from instances of abusive language ... to discriminative sales and leasing policies." The Supreme Court held that the defendant's alleged conduct was "clearly unlawful" under the Unruh Act. (Ibid). *Hutson v. The Owl Drug Co.*, supra , 79 Cal.App. 390, 249 P. 524 and *People v. McKale*, supra , 25 Cal.3d 626, 159 Cal.Rptr. 811, 602 P.2d 731, which the Supreme Court cited approvingly in *Koire v. Metro Car Wash*, supra ,40 Cal.3d at page 29, 219 Cal. Rptr. 133, 707 P.2d 195, show that a business establishment's unequal, race or gender-based treatment of its customers is unlawful under the Unruh Act—even if its customers are not denied services. This is true whether the discriminatory treatment is verbal, physical, or financial. Thus, in the context of alleged racial or gender discrimination, the dispositive question under the Unruh Act is whether the plaintiff faced unequal treatment on account of his or her race or gender that members of other races or gender did not experience.

31. In *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507, 'Substantial Motivating Reason" was explained to be "something that moves the will and induces action even though other matters may have contributed to the taking of the action." Substantial motivating reason encompasses intent and causation. CACI No. 3060, Unruh Civil Rights Act.

32. Defendants, clearly intended to discriminate against Plaintiffs as race was a substantial motivating reason for depriving Plaintiffs, full and equal accommodations while shopping at the store. First, Kohl's' employee seized Plaintiffs' cart from Plaintiff Neal (a Black customer) promising to return it only when Plaintiff Bridges (a White customer) returned to the store. Secondly, the store's employee gave Plaintiff false information about the shoes being on clearance which demonstrates her total dislike for his race as no other reason explains this action. Other Non-Black customers were not treated in the same way and never treated in the same way.

### Associational Discrimination.

33. "We point out that section 52 refers, not only to discrimination on account of the

color of the person discriminated against, but also to any discrimination on account of color. The distinction has often been recognized by cases holding that statutes with language similar to section 52 are not limited in their operation to the color (or other feature) of the person who is the immediate object of the discrimination. (See *McGill v. 830 S. Michigan Hotel* (1966) 68 Ill.App.2d 351 [216 N.E.2d 273]; *Offner v. Shell's City, Inc.* (5th Cir. 1967) 376 F.2d 574; … It is thus manifested by section 51 that all persons are entitled to the full and equal privilege of associating with others in any business establishment. And section 52, liberally interpreted, makes clear that discrimination by such a business establishment against one's right of association on account of the associates' color, is violative of the Act. It follows, responding to the appeal's only issue, that discrimination by a business establishment against persons on account of their association with others of the black race is actionable under the Act." *Winchell v. English* (1976) 62 Cal.App.3d 125, 128-130 [ 133 Cal.Rptr. 20]. See also In re Cox (1970) 3 Cal.3d 205 [ 90 Cal.Rptr. 24, 474 P.2d 992].

34. On the day and time of the incident, Plaintiff Bridges was shopping with her boyfriend Plaintiff Neal. The store's employee would not have misinformed Plaintiffs of the price of the shoes and seized Plaintiffs' shopping cart if Plaintiff Bridges had not gone shopping with a Black man, Plaintiff Neal. Plaintiff Bridges was afforded unequal services, privileges and accommodations at the store because she was associated with Plaintiff Neal, a Black man.

35. UNRUH Act violations are per se injurious, *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195. Over and above that minimum, to say Plaintiffs were harmed is an understatement. Plaintiffs will never recover from this, and every aspect of their social lives have been impacted. Their confidence levels have diminished in epic proportions and all they think about is that skin color can significantly affect their ability to enjoy life. Plaintiffs have had to seek the consolation and help of friends who have so far been very helpful.

36. Kohl's and its employees were not just a significant contributor but the

only contributor to Plaintiffs' injuries. It is clear as day that these injuries were caused by the actions of the employees who decided that Plaintiff could not be offered the same shopping accommodations as all other patrons simply because Plaintiff Neal is an African-American man. Every reasonable man (jury) would arrive at the conclusion that Kohl's, and its employees were the only cause of this nightmare.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Brought by All Plaintiffs Against All Defendants.)

37. Plaintiffs hereby incorporate all preceding paragraphs as if set forth herein.

38. A Cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Potter v. Firestone Tire & Rubber Co*. (1993) 6 Cal.4th 965, 1001, 25 Cal. Rptr.2D 550, 863 P.2d 795; see *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903, 2 CaL.Rptr.2d 79, 820 P.2d 181.

39. A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a community." (*Potter*, at p. 1001, 25 Ca1.Rptr.2d 550, 863 P.2d 795.) Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (Rest.2d Torts § 46, com. d.)" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1122, 252 Cal.Rptr. 122, 762 P.2d 46, overruled on another ground in *Aguilar v. Atlantic Richfield Co*., supra, 25 Cal.4th 826, 853, fn. 19, 107 Ca1.Rptr.2d 841, 24 P.3d 493;

40. Defendants' actions were indeed extreme and outrageous. They should not have seized Plaintiffs' cart simply because Plaintiff Neal is African-American. They should not have misinformed Plaintiffs about the price of shoes simply because Plaintiff Neal is

Black. Such actions transcend the bounds of normalcy and destroy the victims inside-out. Plaintiffs were left emotionally drained and devasted by this terrible incident. Defendants' actions are solely to blame for this. Their prejudices were the only factor that led to the severe emotional pain Plaintiffs are now forced to deal with every day when they wake up and look in the mirror.

## THIRD CAUSE OF ACTION
## NEGLIGENT HIRING, TRAINING, SUPERVISION AND/OR RETENTION OF EMPLOYEE
### (Brought by All Plaintiffs Against Kohl's)

**41.** Plaintiffs hereby incorporate all preceding paragraphs as if set forth herein.

42. Defendants hired the employees who discriminated against Plaintiff. These employees were unfit or incompetent to perform the work for which they were hired as they clearly have animus against Black people and misinformed Plaintiffs about the price of shoes at the store. Defendants knew or should have known that employees were unfit or incompetent and that this unfitness or incompetence created a particular risk to others.

43. Employees' unfitness or incompetence and racial bias harmed Plaintiffx and Defendants' negligence in hiring, training, retaining and/or supervising said employees was a substantial factor in causing Plaintiff the grievous emotional injury that she suffered and continues to suffer.

## FOURTH CAUSE OF ACTION
## (DISCRIMINATION IN VIOLATION OF 42 USC § 1981) –
## Brought by plaintiff Neal against all Defendants.

44. PlaintiffS hereby incorporate all preceding paragraphs as if set forth herein.

45. Section 1981 addresses racial discrimination in contractual relationships and provides: (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . . (b) For purposes of this section, the term "make and enforce

contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law 42 U.S.C. §1981(a)-(c).

46. By seizing the cart from Plaintiff Neal and telling him that he could only get it back when his White Girlfriend returned to the store, Plaintiff Neal's right to make and enforce contracts was infringed upon by Defendants. The same is also true when account is taken of the fact that the store's employee deliberately misinformed Plaintiffs about the price of the shoes they wanted to buy. Plaintiff Neal's race contributed significantly to the profiling he received.

47. Plaintiff Neal was harmed and continues to suffer emotionally as a result of Defendants' actions. Similarly-situated customers like Plaintiff Bridges would not have had the cart seized them because they are White.

48. In *Washington v. Duty Free Shoppers, Ltd.*, 710 F. Supp. 1288, 1289 (N.D. Cal. 1988) summary judgment was denied in § 1981 case where airport store required minority customers, but not white customers, to produce passports and airline tickets. In *Bobbitt v. Rage Bobbitt*, 19 F. Supp. 2d at 518-20., the Western District of North Carolina court held that the African American plaintiffs had established prima facie § 1981 claim because although they were eventually served by the Defendant's employee' restaurant, they, unlike the White customers eating there, were required to prepay for their food. The court found that the prepay requirement altered "an essential term of the customer/restaurateur contract because of race." Id. at 519. Consequently, the court found the defendant had denied the plaintiffs of the " 'enjoyment of all... terms and conditions of the contractual relationship' that were enjoyed by white" customers. Id. (quoting 42 U.S.C. § 1981). That Plaintiffs were eventually served did not change the court's analysis.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. For damages according to proof in excess of the jurisdictional minimum for this court.
2. For declaratory and Injunctive relief.
3. For compensatory damages of not less than **$2,000,000.**
4. For punitive damages where allowed and according to proof.
5. For pre-judgment interest if allowed by law.
6. For costs of suit herein incurred.
7. For attorney's fees to the maximum extent allowed by law.
8. And for such other further relief as the court may deem proper.

**Dated this 11th day of April, 2023**

          **KISOB LAW FIRM**

_____

**Apemwoyah Kisob Alaric-Lorenzo**
**Attorney for the Plaintiff**