UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULINE BRIDGES, et al.,<br><br>  Plaintiff,<br><br>  v.<br><br>KOHL'S STORES, INC.,<br><br>  Defendant. | No. 2:23-cv-00685-DAD-JDP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 10) |

This matter is before the court on the motion to dismiss filed by defendant Kohl's Stores, Inc. on May 19, 2023. (Doc. No. 10.) On June 30, 2023, defendant's motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 17.) For the reasons explained below, the court will grant defendant's motion to dismiss.

**BACKGROUND**

On April 12, 2023, plaintiffs Pauline Bridges and Thomas Neal filed the complaint initiating this lawsuit against defendant Kohl's Stores, Inc. and unnamed Doe defendants 1–10, alleging discrimination. (Doc. No. 1 at 1, 5–9.) Rather than serve the original complaint on defendant, plaintiffs instead filed the operative first amended complaint ("FAC") on April 18, 2023. (Doc. No. 6.) In their FAC, plaintiffs allege the following.

Plaintiff Neal and plaintiff Bridges are in a relationship with each other and both reside in San Francisco County, California. (Doc. No. 6 at ¶¶ 1, 18.) Plaintiff Neal is a Black man and

1    plaintiff Bridges is a white woman.  (*Id*. at ¶¶ 17–18.)  On September 19, 2022, plaintiffs entered
2    the Kohl's store in Stockton, California.  (*Id.* at ¶ 12.)  During their time shopping, a loss
3    prevention associate named Erica "made herself extremely present."  (*Id.*)  Plaintiffs were
4    uncomfortable with Erica's hostile disposition and how aggressively she followed them.  (*Id*.)  At
5    some point while shopping, plaintiff Bridges decided to step outside the store for a few minutes to
6    get some air.  (*Id.* at ¶ 13.)  Before doing so, she asked plaintiff Neal to grab a shoe box marked
7    with a clearance tag that matched the shoes they had already put in their cart so they could show
8    the clearance tag to the clerk at checkout.  (*Id.* at ¶¶ 13, 15.)

9         As plaintiff Neal attempted to return to the shoe department, Erica approached him and
10   asked if she could help.  (*Id.* at ¶ 14.)  Plaintiff Neal responded that he was fine and explained that
11   he was returning to the shoe department to grab a pair of shoes that were marked on clearance
12   that matched the pair that he already had in his cart.  (*Id.* at ¶ 15.)  Erica then pulled out her
13   phone, looked at the shoes, and informed plaintiff Neal that those shoes would not be on
14   clearance because of their popularity.  (*Id.* at ¶ 16.)  Plaintiff Neal felt uncomfortable and turned
15   the cart around to head towards the jewelry department.  (*Id.* at ¶ 17.)  Erica grabbed the cart and
16   said she would take it to customer service until his girlfriend came back in and was ready to
17   check out.  (*Id*.)

18        Plaintiff Neal then walked outside to meet plaintiff Bridges and let her know what had
19   happened.  (*Id.* at ¶ 18.)  Together the plaintiffs went back into the store, headed for the shoe
20   department, and found the same shoes that Erica had said were not on sale marked for clearance.
21   (*Id*.)  Plaintiffs then picked up several boxes of shoes, went to the front, and spoke with the
22   manager about the entire situation.  (*Id.* at ¶ 19.)  The manager apologized profusely and
23   accompanied plaintiffs to pick up their cart and then to the checkout stand.  (*Id.*)

24        This incident has subsequently bothered plaintiffs every day.  (*Id.* at ¶ 22.)  Plaintiff Neal
25   has lost confidence in himself and feels as if he is subhuman because of the color of his skin.
26   (*Id.*)  Plaintiff Bridges is devastated and feels like she would always be targeted if she associates
27   with a person of color.  (*Id.*)
28   /////

1  Based on these allegations set forth in their FAC, plaintiffs bring the following four claims
2  against defendant: (1) discrimination in violation of California's Unruh Civil Rights Act ("Unruh
3  Act"), California Civil Code §§ 51, *et seq*.; (2) intentional infliction of emotional distress; (3)
4  negligent hiring, training, supervision, and/or retention; and (4) discrimination in violation of 42
5  U.S.C. § 1981.[1]  (Doc. No. 6 at 1, 5–11.)
6  On May 19, 2023, defendant filed the pending motion to dismiss plaintiffs' FAC in its
7  entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 10-1.)  On May 26,
8  2023, plaintiffs filed an opposition to the pending motion to dismiss, and on June 5, 2023,
9  defendant filed its reply thereto.  (Doc. Nos. 15, 16.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

---

[1] The first three claims are brought by both plaintiffs.  The fourth claim is brought by plaintiff Neal only.

3

mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

**A.     Plaintiffs' Claims**

       1.     <u>Unruh Act Claim</u>

The Unruh Act "is a public accommodations statute that focuses on discriminatory behavior by business establishments." *Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1452 (2006) (citation omitted). It states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

To state a claim under the Unruh Act, a plaintiff must sufficiently allege the following elements: (1) he suffered discrimination "in a business establishment;" (2) his protected status "was a motivating factor;" (3) the defendant's action "was the result of its intentional discrimination" against the plaintiff; and (4) the "wrongful conduct caused him to suffer injury." *H.M. v. Cnty. of Kern*, No. 1:20-cv-1339-JLT-BAM, 2022 WL 1625183, at *3 (E.D. Cal. May 23, 2022). "To plead intentional discrimination, [a] plaintiff cannot merely invoke his race in the course of a claim's narrative." *Jimenez v. Home Depot Inc.*, No. 2:23-cv-00937-WBS-AC, 2023 WL 5021266, at *3 (E.D. Cal. Aug. 7, 2023). Further, a personal belief of discrimination, without any factual support, is "insufficient to satisfy federal pleading standards." *Corral v. Bank of Am., N.A.*, No. 16-cv-00964-EMC, 2016 WL 4070132, at *4 (N.D. Cal. July 29, 2016).

         a.     *Plaintiff Neal's Unruh Claim*

In its pending motion to dismiss, defendant argues that plaintiff Neal has not adequately plead the third requisite element for his Unruh claim because the FAC contains no facts to

support plaintiff Neal's allegation that its loss prevention associate's conduct was undertaken with discriminatory intent. (Doc. No. 10-1 at 11–12.) In their FAC, plaintiffs allege that discriminatory intent is clear because defendant's "employee seized Plaintiffs' cart from Plaintiff Neal (a Black customer) promising to return it only when Plaintiff Bridges (a White customer) returned to the store," and the "employee gave Plaintiff false information about the shoes being on clearance which demonstrates her total dislike for his race as no other reason explains this action." (Doc. No. 6 at ¶ 32.) Plaintiffs further allege that "[o]ther [n]on-Black customers were not treated in the same way and never treated in the same way." (*Id.*) However, these allegations are conclusory and thus insufficient to state a cognizable claim under the Unruh Act. *See Johnson v. United States,* No. 23-cv-02336-DMR, 2024 WL 85871, at *4 (N.D. Cal. Jan. 8, 2024) (finding that the plaintiff's allegations of intentional discrimination in her Unruh Act claim were "entirely conclusory" where they did not include "comments, conduct, or instances where others were treated differently that would support her claims") (citation and internal quotation marks omitted).

Accordingly, the court will dismiss plaintiff Neal's Unruh Act claim. *See Card v. Ralph Lauren Corp.,* No. 18-cv-02553-JSC, 2018 WL 4108082, at *8 (N.D. Cal. Aug. 29, 2018) (dismissing the plaintiff's Unruh Act claim where plaintiff alleged that "the only conclusion that can reasonably be drawn is that the treatment . . . could only be explained by animus toward her immutable characteristics"); *Jones v. Dollar Tree Stores, Inc.,* No. 21-cv-7441-PA-PVC, 2021 WL 6496822, at *6 (C.D. Cal. Nov. 4, 2021) (dismissing the plaintiff's Unruh Act claim because it lacked "the necessary details and supporting facts to infer discriminatory intent"). Nonetheless, plaintiff Neal will be granted leave to amend his Unruh Act claim because it is not absolutely clear to the court that allowing further amendment in this regard would be futile. *See Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (noting that the Ninth Circuit has a policy of "extreme liberality generally in favoring amendments to pleadings."); Fed. R. Civ. P. 15(a) (providing that leave to amend should be granted "freely" when justice so requires).

/////

/////

1            b.       *Plaintiff Bridges's Unruh Claim*

2      Defendant also argues that plaintiff Bridges's Unruh Act claim must be dismissed due to her lack of standing since plaintiffs do not allege that any discriminatory conduct was directed towards her, and plaintiffs allege that she was outside when the discriminatory conduct occurred. (Doc. No. 10-1 at 12.)  In their opposition, plaintiffs argue that plaintiff Bridges did suffer unequal treatment, even though she was not present when the shopping cart was seized, because the cart contained items that both she and plaintiff Neal wanted to purchase.  (Doc. No. 15 at 3.)

     With regard to standing, the California Supreme Court has explained that "a person suffers discrimination under the [Unruh] Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services." *White v. Square, Inc.,* 7 Cal. 5th 1019, 1023 (2019).  Here, plaintiffs' FAC does not include any allegations that plaintiff Bridges was prevented from using defendant's services.  Instead, plaintiffs allege that shortly after she returned inside the store, plaintiffs picked up their cart and went to the checkout stand where they were assisted by the store's manager.  (Doc. No. 6 at ¶¶ 18–19.)  These allegations are insufficient to state a cognizable Unruh Act claim on behalf of plaintiff Bridges.  *See Dalton v. Home Away, Inc.,* No. 1:21-cv-1722-AWI-HBK, 2022 WL 4537912, at *13 (E.D. Cal. Sept. 28, 2022) ("A plaintiff must have actually been the victim of the defendant's discriminatory action."). Thus, plaintiff Bridges's Unruh Act claim will also be dismissed, but with leave to amend granted.

         2.       Intentional Infliction of Emotional Distress ("IIED") Claim

     An IIED claim under California law requires:  (1) extreme and outrageous conduct by the defendant; (2) with the intention of causing emotional distress or reckless disregard of the probability of causing emotional distress; (3) plaintiff's suffering of severe emotional distress; and (4) actual and proximate causation of plaintiff's emotional distress by defendant's conduct. *A.H. v. Sacramento Cnty. Dep't of Child, Fam., & Adult Servs*., No. 2:21-cv-00690-DAD-JDP, 2023 WL 2938380, at *6 (E.D. Cal. Apr. 13, 2023).  In the pending motion to dismiss, defendant

/////

1 challenges plaintiffs' allegations with respect to the first and third requirements, which plaintiffs
2 argue are sufficiently alleged. (Doc. Nos. 10-1 at 13–16; 15 at 4–5.)

3       As to the first element, "[a] defendant's conduct is outrageous when it is so extreme as to
4 exceed all bounds of that usually tolerated in a civilized society." *Hughes v. Pair*, 46 Cal. 4th
5 1035, 1050–51 (2009) (citation and internal quotation marks omitted). However, discriminatory
6 conduct of any kind does not necessarily constitute extreme and outrageous conduct. *James v.*
7 *U.S. Bancorp*, No. 5:18-cv-01762-RGK-SP, 2019 WL 3058971, at *5 (C.D. Cal. Jan. 11, 2019)
8 ("Discriminatory conduct alone is not *per se* extreme and outrageous."); *Makhzoomi v. Sw.*
9 *Airlines Co.*, 419 F. Supp. 3d 1136, 1161 (N.D. Cal. 2019) (noting that the plaintiff "offers no
10 argument or authority to support that discriminatory conduct of any kind can constitute extreme
11 and outrageous conduct"). Instead, the nature of the discriminatory conduct alleged may support
12 an IIED claim. *James*, 2019 WL 3058971, at *5.

13       Here, plaintiffs allege that the loss prevention associate's actions of seizing the shopping
14 cart and providing wrong information about the price of the shoes were extreme and outrageous
15 and transcend the bounds of normalcy. (Doc. No. 6 at 9–10.) The court disagrees. Holding a
16 shopping cart until checkout and giving incorrect pricing information, "particularly in the absence
17 of threatening or offensive language," does not amount to the extreme and outrageous conduct
18 necessary to state a claim for IIED. *Jimenez*, 2023 WL 5021266, at *3. Plaintiffs have merely
19 stated in conclusory fashion that the alleged conduct was extreme and outrageous, without any
20 factual allegations to support that conclusion, which is insufficient to state an IIED claim. *See*
21 *Jones*, 2021 WL 6496822, at *6 (finding the plaintiff's IIED allegations to be deficient as they
22 merely "rel[y] on a formulaic recitation of the elements for an IIED cause of action"). While
23 plaintiffs may allege that they were offended by the associate's actions, "being offended is
24 insufficient to support a claim for IIED." *Jimenez*, 2023 WL 5021266, at *3. Therefore, the
25 court concludes that plaintiffs have failed to allege facts sufficient to satisfy the first element of
26 an IIED claim.

27       As to the third element of an IIED claim, severe emotional distress has been defined as
28 "distress of such substantial quality or enduring quality that no reasonable man in a civilized

society should be expected to endure it." *Monte v. City of Lodi*, No. 2:17-cv-00411-MCE-DB, 2018 WL 1993806, at *6 (E.D. Cal. Apr. 27, 2018) (finding that the plaintiff's allegations of lost sleep, nervousness, anxiety, and requiring professional mental health services did not suggest sufficiently severe emotional distress to state a claim for IIED). In their FAC, plaintiffs allege that they were left emotionally drained by this incident and now suffer severe emotional pain every day. (Doc. No. 6 at ¶ 40.) As currently pled, this description essentially recites the third element of an IIED claim with no elaboration. In their opposition to the pending motion, plaintiffs explain that this is because the emotional trauma is beyond description. (Doc. No. 15 at 5.) However, a sufficient description of the facts supporting an IIED claim is required to meet federal pleading standards. *See McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-cv-0358-BAM, 2018 WL 6436256, at *7 (E.D. Cal. Dec. 7, 2018) (explaining that the "[p]laintiffs simply recite the elements of emotional distress claims, which is insufficient to survive a motion to dismiss"); *R.N. by & through Neff v. Travis Unified Sch. Dist.*, No. 2:20-cv-00562-KJM-JDP, 2020 WL 7227561, at *14 (E.D. Cal. Dec. 8, 2020) (granting the defendants' motion to dismiss where the "plaintiffs' complaint does little more than recite the elements of an IIED claim").

Therefore, the court concludes that plaintiffs have likewise failed to allege facts sufficient to satisfy the third element of an IIED claim. Accordingly, the court will dismiss plaintiffs' IIED claim with leave to amend.

        3.    <u>Negligent Hiring, Training, Supervision, and Retention Claim</u>

In California, "an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 843 (1992). However, "when nothing exists to suggest that [a] prospective employee poses a threat to those he or she may encounter in the course of the work," the employer's hiring of that employee does not constitute negligent hiring. *Federico v. Superior Court of Sacramento Cnty.*, 59 Cal. App. 4th 1207, 1213 (1997). To state a claim for negligent training, a plaintiff must allege that: (1) there is an inadequate training program, (2) there is deliberate indifference on the part of defendant in adequately training its employees, and (3) the

8

inadequate training actually caused a deprivation of rights. *Calhoon v. City of S. Lake Tahoe*, No. 2:19-cv-02165-KJM-JDP, 2020 WL 5982087, at *6 (E.D. Cal. Oct. 8, 2020) (citing *Merritt v. City of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)). Liability for negligent supervision of an employee requires "knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Noble v. Sears, Roebuck & Co.,* 33 Cal. App. 3d 654, 664 (1973). And finally, liability for negligent retention occurs "when the employer knew or should have known that . . . retaining the employee created a particular risk or hazard and that particular harm materializes." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009).

In their FAC, plaintiffs allege that defendant hired unfit or incompetent employees, that defendant knew or should have known that the employees were unfit or incompetent, and that this unfitness or incompetence created a risk to others. (Doc. No. 6 at ¶ 42.) They also allege that defendant's negligence in hiring, training, supervising, and/or retaining those employees was a substantial factor in causing plaintiffs injury. (*Id.* at ¶ 43.) Plaintiffs advance no other allegations related to this cause of action, and the allegations they do include in their FAC are insufficient to state a claim for negligent hiring, training, supervision, and retention. *See Molina v. City of Visalia*, No. 1:13-cv-01991-LJO, 2014 WL 1329711, at *1 (E.D. Cal. Apr. 2, 2014) (finding that plaintiffs failed to state a claim where their complaint contained "generic assertions" but no "specific factual allegations to support these conclusory assertions"); *Avila v. California*, No. 1:15-cv-00996-JAM-GSA, 2015 WL 6003289, at *6 (E.D. Cal. Oct. 14, 2015) ("Simply alleging that [the employee] 'failed to properly and adequately train and supervise the law enforcement personnel employed by [him]' is insufficient, alone, to state a claim against CHP."). As a result, the court will dismiss plaintiffs' claim of negligent hiring, training, supervising, and/or retention, with leave to amend. *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.,* No. 2:13-cv-01378-WBS-AC, 2015 WL 6447484, at *3 (E.D. Cal. Oct. 23, 2015) (dismissing the plaintiff's claim of negligent hiring, retaining, or supervising where the complaint contained only a conclusory statement and was "unsupported by any facts").

/////

    4.  <u>Plaintiff Neal's Section 1981 Discrimination Claim</u>

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981. The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (*Id.*) To state a discrimination claim under § 1981, a plaintiff must allege that he: (1) is a member of a protected class; (2) attempted to contract for certain services; and (3) was denied the right to contract for those services. *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). In addition, "[t]he plaintiff must also plausibly allege that the defendant impaired that relationship on account of intentional discrimination." *Astre v. McQuaid*, 804 F. App'x 665, 666 (9th Cir. 2020).[2]

Defendant argues that plaintiffs have not adequately alleged that plaintiff Neal attempted to contract for certain services or was denied the right to do so. (Doc. No. 10-1 at 18.) The court agrees that plaintiff Neal has not alleged an impaired contractual relationship as required to state a cognizable claim under § 1981. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Any § 1981 claim . . . must initially identify an impaired contractual relationship . . . under which the plaintiff has rights."). Plaintiffs' FAC does not identify an attempt to contract that was denied, since plaintiffs do not allege that plaintiff Neal made any attempts to effectuate a purchase or that those efforts to make a purchase were thwarted. Plaintiffs' allegations that a store employee seized plaintiff Neal's cart and misinformed him about the price of a pair of shoes are not sufficient, as at most they raise an inference that that there was a delay in the process of entering a contractual relationship and checking out. (Doc. No. 6 at 4.) Moreover, in the absence of Ninth Circuit authority to the contrary, the court is persuaded by out-of-circuit decisions which suggest that mere delays do not amount to denials of the right to contract for purposes of a § 1981 claim. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1234 (11th Cir. 2012) (finding that where the plaintiff was still "able to make his desired purchase from Target, on the same terms available to

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

10

any other customer," one cashier's "discriminatory conduct did not impair [the plaintiff's] right to make contracts under § 1981") (citing *Arguello v. Conoco, Inc.,* 330 F.3d 355, 358 (5th Cir. 2003) ("To establish a deprivation of § 1981 rights in the retail context, the plaintiff must demonstrate 'the loss of an actual . . . contract interest.'")); *see also Knight v. Wells Fargo Bank NA*, 459 F. Supp. 3d 1288, 1292–93 (N.D. Cal. 2019) (discussing the "general rule that a mere delay in service will not demonstrate an actual contract loss" before finding that the plaintiff "has alleged something more than delayed or poor service" to state a claim under § 1981) (citation and internal quotation marks omitted); *Marshall v. Ross Stores, Inc.*, No. 20-cv-04703-PSG-PLA, 2020 WL 8173022, at *3 (C.D. Cal. Oct. 14, 2020) (citing the decision in *Lopez* in concluding that the plaintiffs failed to state a § 1981 claim where their shopping trip was interrupted by their need to use the restroom and the defendant's refusal to let them do so).

For these reasons, the court will dismiss plaintiff Neal's § 1981 claim, with leave to amend.

**B.      Plaintiffs' Prayer for Relief**

In addition to moving to dismiss plaintiffs' substantive claims, defendant also moves to dismiss certain forms of relief that plaintiffs have included in their prayer for relief. (Doc. No. 10-1 at 19–22.)

1.      <u>Punitive Damages</u>

California law limits the ability to impose punitive damages on a corporate employer for the acts of an employee. *See* Cal. Civ. Code § 3294. There are three paths under the applicable state statute to punitive damages: (1) if an officer, director, or managing agent of the corporate employer knew of the employee's unfitness and employed her with conscious disregard for the rights of others; (2) if an officer, director, or managing agent of the corporation authorized or ratified the employee's oppressive, fraudulent, or malicious conduct; or (3) if the employer was personally guilty of oppression, fraud, or malice. *Id.*; *Schluckbier v. Mastec N. Am., Inc.*, No. 14-cv-02047-VAP-DTB, 2015 WL 13918498, at *3 (C.D. Cal. Mar. 10, 2015).

Defendant moves to dismiss plaintiffs' request for punitive damages because the FAC lacks supporting factual allegations that any officer, director, or managing agent knew that the

1 loss prevention associate was an unfit employee and nonetheless employed her or ratified her
2 conduct. (Doc. No. 10-1 at 19.)  Plaintiffs argue in opposition that they seek punitive damages
3 where allowed and according to proof, and they cannot be expected to know more specific facts at
4 this early stage of the litigation. (Doc. No. 15 at 9.)

5 Federal pleading standards require that a complaint contains sufficient factual allegations
6 to state a claim for punitive damages that is plausible on its face. *See Rozier v. Dep't of*
7 *Homeland Sec. Fed. Protective Serv.,* No. 2:21-cv-07232-SB-AFM, 2022 WL 2199938, at *2
8 (C.D. Cal. Mar. 7, 2022).  Here, plaintiff has not sufficiently alleged any facts that if proven
9 would show that a managing agent or supervisory employee at Kohl's knew of the loss prevention
10 associate's unfitness, ratified her conduct, or were themselves personally guilty of oppression,
11 fraud or malice.  Thus, defendant's motion to dismiss plaintiffs' prayer for punitive damages will
12 be granted, with leave to amend. *See Schluckbier*, 2015 WL 13918498, at *5 (finding the
13 plaintiff's request for punitive damages "untenable" under the § 3294(b) framework).

14     2.    <u>Declaratory and Injunctive Relief</u>

15 Plaintiffs seek declaratory and injunctive relief in this case. (Doc. No. 6 at 12.)  However,
16 as defendant notes in its motion to dismiss, plaintiffs provide no further detail regarding what
17 specific declaratory and injunctive relief they are requesting. (Doc. No. 10-1 at 21.)  In their
18 opposition, plaintiffs merely respond that defendant is on sufficient notice as to the declaratory
19 and injunctive relief. (Doc. No. 15 at 9–10.)  In its reply, defendant argues that they have no
20 notice because there are no details whatsoever regarding the declaratory and injunctive relief
21 sought by plaintiffs in this action. (Doc. No. 16 at 7.)

22 "[C]onclusory claims to injunctive and/or declaratory relief—without descriptions of the
23 particular relief sought and supporting factual allegations . . . are not sufficient to state a
24 cognizable claim upon which relief may be granted." *Quezada v. California*, No. 1:20-cv-00959-
25 DAD-SAB, 2021 WL 2417119, at *6 (E.D. Cal. June 14, 2021).  In their FAC, plaintiffs have not
26 requested or described any specific injunctive or declaratory relief.  Their argument that
27 defendant is on sufficient notice of what they seek in this regard is not supported by the
28 allegations of their FAC.  Therefore, the court will dismiss plaintiffs' claims for declaratory and

injunctive relief, with leave to amend.

### 3. Attorneys' Fees

Plaintiffs also seek attorneys' fees in this action. (Doc. No. 6 at 12.) Plaintiffs and defendant appear to agree that the availability of attorneys' fees in this case is predicated on the success of plaintiffs' claims brought under the Unruh Act and § 1981. (Doc. Nos. 10-1 at 21; 15 at 10.) Given that these claims will be dismissed with leave to amend, the availability of attorneys' fees will depend on whether those claims are adequately pled in any amended complaint plaintiffs elect to file. As such, defendant's motion to dismiss plaintiffs' claim for attorneys' fees in their prayer for relief will also be granted, with leave to amend.

## CONCLUSION

For the reasons explained above:

1. Defendant's motion to dismiss plaintiffs' first amended complaint (Doc. No. 10) is granted, with leave to amend;
2. Plaintiffs shall file their second amended complaint if they continue to wish to pursue this action, or alternatively, a notice of their intent not to do so, within twenty-one (21) days from the date of entry of this order; and
3. Plaintiffs are warned that their failure to comply with this order may result in dismissal of this action for failure to prosecute.

IT IS SO ORDERED.

Dated: **February 12, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

13